UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MALIK PAYANO, JUAN C. SUÀREZ,     :
MAKESA KEKE FOFANA, MINDY LIU, JUAN  :
GARCIA, and JORGE E. FLORES JR., on behalf  :
of themselves and all others similarly situated,  :
    :   **COMPLAINT**
          Plaintiffs,  :
    :   **FLSA COLLECTIVE ACTION**
    -against-    :   **AND RULE 23 CLASS ACTION**
    :
BURBERRY LIMITED a/k/a BURBERRYS  :
LIMITED,    :
    :   **JURY TRIAL DEMANDED**
          Defendant.  :
-------------------------------------------------------------X

Plaintiffs MALIK PAYANO, JUAN C. SUÀREZ, MAKESA KEKE FOFANA, MINDY LIU,

JUAN GARCIA, and JORGE E. FLORES JR. (collectively "Plaintiffs"), on behalf of themselves

and all others similarly situated, by their undersigned attorneys, allege, upon personal knowledge

as to themselves and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. This is a collective action lawsuit under the Fair Labor Standards Act, as amended, 29

    U.S.C. §§ 201 et seq., ("FLSA") and is brought to remedy widespread wage and hour

    violations by BURBERRY LIMITED a/k/a BURBERRYS LIMITED ("Burberry" or

    "Defendant") that have deprived Plaintiffs and all other current and former hourly sales

    associates and sales leads ("Sales Associates") throughout New York City of overtime

    and other wages to which they are entitled.

2. Plaintiffs also bring this as a class action pursuant to Federal Rule Civil Procedure Rule

    23 to remedy violations of the New York Labor Law, Article 19, §§ 650 et. seq.

    ("NYLL"), and the supporting New York State Department of Labor regulations, and to

recover unpaid overtime and other wages to which they are entitled, on behalf of themselves and all similarly situated current and former Sales Associates who work, or worked, for Defendant in any of Defendant's New York City locations.

3. Plaintiffs and the other Sales Associates were not "exempt" from the FLSA or NYLL and Defendant classified them as non-exempt from the FLSA and NYLL.

4. Plaintiffs and the other Sales Associates were not compensated for all of the time they worked for Defendant, including pre and post shift work and when they worked through their one-hour unpaid lunch breaks.

5. Defendant has thus willfully engaged in a pattern, practice, and policy of unlawful conduct by failing to properly record, credit, and compensate Plaintiffs and the other Sales Associates for work which Defendant effectively required and/or permitted them to work in excess of (i) their paid hours, and (ii) 40 hours per week.

6. Defendant's pattern, practice and policy of requiring or permitting work without properly compensating its employees for same has violated its employees' rights under the FLSA and New York law.

## JURISDICTION AND VENUE

7. This Court has original federal question jurisdiction over Plaintiffs' FLSA claims because this case is brought pursuant to the FLSA.  This Court has supplemental jurisdiction over the NYLL claims as they are so related to the claims in this action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper within this District pursuant to 28 U.S.C. § 1391, because the Defendant does business in, and accordingly resides in, this District and because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this District.

## THE PARTIES

9. Plaintiff PAYANO resides in the County of Bronx in the State of New York.  He was employed by Defendant as an hourly sales associate from in or about February 2011 until January 2012, approximately.

10. Plaintiff SUÀREZ resides in the State of New Jersey.  He was employed by Defendant as an hourly sales associate from in or about May 2010 until March 2012, approximately.

11. Plaintiff FOFANA resides in the County of Bronx in the State of New York. She was employed by Defendant as an hourly sales associate from in or about May 2010 until July 2012, approximately.

12. Plaintiff GARCIA resides in the County of New York in the State of New York.  He was employed by Defendant as an hourly sales associate from in or about May 2010 until July 2012, approximately.

13. Plaintiff FLORES resides in the County of Bronx in the State of New York.  He was employed by Defendant as an hourly sales associate from in or about June 2011 until May 2014, approximately.

14. Plaintiffs PAYANO, SUÀREZ, FOFANA, GARCIA, and FLORES (collectively "Non–Flagship Sales Associate Plaintiffs") worked for Defendant as Sales Associates assigned to work in Defendant's Columbus Avenue and Madison Avenue New York City stores.

15. Plaintiff LIU resides in the County of Kings in the State of New York.  She was employed by Defendant as an hourly sales associate from in or about May 2011 until January 2014, approximately.

16. Plaintiff LIU ("Flagship Sales Associate Plaintiff") worked for Defendant as a Sales Associate assigned to work in Defendant's 57th Street Flagship New York City store.

17. Defendant Burberry Limited a/k/a Burberrys Limited ("Defendant") is a New York Corporation with a corporate address at 444 Madison Avenue in New York City.

18. At all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate "commerce", and/or in the "production of goods" for "commerce", within the meaning of 29 U.S.C. § 203 and the NYLL.

19. At all relevant times, Defendant has employed "employee[s]", including each of the Plaintiffs and each of the FLSA Collective Plaintiffs and Class Members.

## **Non-Flagship FLSA COLLECTIVE ACTION ALLEGATIONS**

20. The Non-Flagship Sales Associate Plaintiffs sue on behalf of themselves and all other similarly situated Non-Flagship Sales Associates employed at Defendant's non-Flagship Manhattan, New York City locations (the "FLSA Non-Flagship Collective").  Plaintiffs are appropriate representatives of this collective action under 29. U.S.C. §216(b).

21. The Non-Flagship Sales Associate Plaintiffs and the other Sales Associates employed by Defendant at its New York City non-Flagship stores ("Non-Flagship Sales Associates") are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendant's decision, plan and common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay them at least one-and-one-half times their regular hourly rates

4

of pay for work in excess of forty (40) hours per workweek.  Defendant routinely required them to work weekly hours in excess of forty but failed to pay them overtime compensation at time and one-half their regular rate.

### Flagship FLSA COLLECTIVE ACTION ALLEGATIONS

22. The Flagship Sales Associate Plaintiff sues on behalf of herself and all other similarly situated Flagship Sales Associates employed by Defendant at its Flagship Manhattan, New York City location (the "FLSA Flagship Collective").  Plaintiff LIU is an appropriate representative of this collective action under 29. U.S.C. §216(b).

23. The Flagship Sales Associate Plaintiff and the other Sales Associates employed by Defendant at its New York City Flagship store ("Flagship Sales Associates") are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendant's decision, plan and common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay them at least one-and-one-half times their regular hourly rates of pay for work in excess of forty (40) hours per workweek.  Defendant routinely required them to work weekly hours in excess of forty but failed to pay them overtime compensation at time and one-half their regular rate.

### Non-Flagship RULE 23 CLASS ALLEGATIONS

24. The Non-Flagship Sales Associate Plaintiffs bring the Second and Third Claims for Relief pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 23, to recover unpaid wages, unpaid overtime pay, and other damages, on behalf of themselves and all of Defendant's current and former Sales Associates who were employed at Defendant's

non-Flagship New York City Burberry stores on or after the date that is six years before the filing of this Complaint (the "Non-Flagship Class").

25. During the Non-Flagship Class' employment with Defendant, they consistently worked longer hours than they were paid for, and are thus owed (i) wages at their regular rates of pay for all hours up to 40 in a workweek, and (ii) overtime wages for all hours in excess of 40 in a workweek.

26. The number and identify of, and the names and addresses of, the Non-Flagship Class are readily ascertainable from the records of the Defendant.  The dates of employment and the rates of pay for each member of the Non-Flagship Class, the hours assigned and worked, and the wages paid to them, are also determinable from Defendant's records. Notice can be provided by means permissible under FRCP Rule 23.

27. The proposed Non-Flagship Class is so numerous that joinder of all members of the Non-Flagship Class is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the precise number of such persons is unknown to Plaintiffs and is presently within the sole control of Defendant, Plaintiffs believe that there are significantly more than forty (40) members of the Non-Flagship Class.

28. Plaintiffs' claims are typical of those claims which could be alleged by any Non-Flagship Class member, and the relief sought is typical of the relief which would be sought by each Non-Flagship Class member in separate actions.  All the members of the Non-Flagship Class were subject to the same corporate practices and policies of Defendant, as alleged herein, of willfully failing and refusing to properly pay them (i) for all hours worked up to forty (40) per workweek at their regular rate of pay, and (ii) at least one-and-one-half times their regular hourly rates of pay for work in excess of forty (40) hours

per workweek, and of violating NYLL §195(3).  Defendant's corporate-wide policies and practices affected all Non-Flagship Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Non-Flagship Class member.  Plaintiffs and each Non-Flagship Class member sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

29. Plaintiffs are able to fairly and adequately protect the interests of the Non-Flagship Class and have no interests antagonistic to the Non-Flagship Class.  Plaintiffs are represented by attorneys who are experienced and competent in wage and hour class action litigation who have many times previously represented plaintiffs in wage and hour class cases.

30. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries and damages suffered by each of the individual Non-Flagship Class members are relatively small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Non-Flagship Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a

significant saving of these costs.  The prosecution of separate actions by individual members of the Non-Flagship Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Non-Flagship Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Non-Flagship Class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

31. Upon information and belief, employees of Defendant and other employers are often afraid to individually assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because they fear that doing so could harm their employment and future efforts to secure employment.   Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

32. The questions of law and fact common to the Non-Flagship Class predominate over any questions affecting only individual Non-Flagship Class members, including: (a) whether Defendant failed to keep true and accurate time records for all daily and weekly hours worked by the Non-Flagship Class members and other payroll records required by the NYLL, (b) whether Defendant failed to pay the Non-Flagship Class members their regular hourly rates of pay for all work performed up to forty (40) hours per workweek; (c) whether Defendant failed to pay the Non-Flagship Class members at least one-and-one-half times their regular hourly rates of pay for all work in excess of forty (40) hours per workweek; (d) whether the Non-Flagship Class members are entitled to damages for

unpaid regular and/or overtime wages, and if so, the means of measuring such damages; (e) whether Defendant is liable for NYLL liquidated damages; and (f) whether it was Defendant's policy and practice to fail to furnish the Non-Flagship Class members with an accurate statement of wages, hours worked, rates paid, and gross wages as required by NYLL §195(3).

33. Absent a class action, many of the Non-Flagship Class members likely will not obtain redress of their injuries and Defendant will retain the proceeds of its violations of the NYLL.

## **Flagship RULE 23 CLASS ALLEGATIONS**

34. The Flagship Sales Associate Plaintiff brings the Second and Third Claims for Relief pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 23, to recover unpaid wages, unpaid overtime pay, and other damages, on behalf of herself and all of Defendant's current and former Sales Associates who were employed by Defendant at Defendant's Flagship New York City Burberry store on or after the date that is six years before the filing of this Complaint (the "Flagship Class").

35. During the Flagship Class' employment with Defendant, they consistently worked longer hours than they were paid for, and are thus owed (i) wages at their regular rates of pay for all hours up to 40 in a workweek, and (ii) overtime wages for all hours in excess of 40 in a workweek.

36. The number and identify of, and the names and addresses of, the Flagship Class are readily ascertainable from the records of the Defendant.  The dates of employment and the rates of pay for each member of the Flagship Class, the hours assigned and worked,

and the wages paid to them, are also determinable from Defendant's records. Notice can be provided by means permissible under FRCP Rule 23.

37. The proposed Flagship Class is so numerous that joinder of all members of the Flagship Class is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the precise number of such persons is unknown to Plaintiffs and is presently within the sole control of Defendant, Plaintiffs believe that there are significantly more than forty (40) members of the Flagship Class.

38. The Flagship Sales Associate Plaintiff's claims are typical of those claims which could be alleged by any Flagship Class member, and the relief sought is typical of the relief which would be sought by each Flagship Class member in separate actions. All the members of the Flagship Class were subject to the same corporate practices and policies of Defendant, as alleged herein, of willfully failing and refusing to properly pay them (i) for all hours worked up to forty (40) per workweek at their regular rate of pay, and (ii) at least one-and-one-half times their regular hourly rates of pay for work in excess of forty (40) hours per workweek, and of violating NYLL §195(3). Defendant's corporate-wide policies and practices affected all Flagship Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Flagship Class member. The Flagship Sales Associate Plaintiff and each Flagship Class member sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

39. The Flagship Sales Associate Plaintiff is able to fairly and adequately protect the interests of the Flagship Class and has no interests antagonistic to the Flagship Class. Plaintiffs are represented by attorneys who are experienced and competent in wage and hour class

action litigation who have many times previously represented plaintiffs in wage and hour class cases.

40. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Flagship Class members are relatively small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Flagship Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Flagship Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Flagship Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Flagship Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide

proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

41. Upon information and belief, employees of Defendant and other employers are often afraid to individually assert their rights out of fear of direct or indirect retaliation.  Former employees are fearful of bringing claims because they fear that doing so could harm their employment and future efforts to secure employment.   Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

42. The questions of law and fact common to the Flagship Class predominate over any questions affecting only individual Flagship Class members, including: (a) whether Defendant failed to keep true and accurate time records for all daily and weekly hours worked by the Flagship Class members and other payroll records required by the NYLL, (b) whether Defendant failed to pay the Flagship Class members their regular hourly rates of pay for all work performed up to forty (40) hours per workweek;   (c) whether Defendant failed to pay the Flagship Class members at least one-and-one-half times their regular hourly rates of pay for all work in excess of forty (40) hours per workweek; (d) whether the Flagship Class members are entitled to damages for unpaid regular and/or overtime wages, and if so, the means of measuring such damages; (e) whether Defendant is liable for NYLL liquidated damages; and (f) whether it was Defendant's policy and practice to fail to furnish the Flagship Class members with an accurate statement of wages, hours worked, rates paid, and gross wages as required by NYLL §195(3).

43. Absent a class action, many of the Flagship Class members likely will not obtain redress of their injuries and Defendant will retain the proceeds of its violations of the NYLL.

## FACTUAL ALLEGATIONS

### The Non-Flagship Sales Associates

44. The Non–Flagship Sales Associate Plaintiffs worked for Defendant as Sales Associates assigned to work primarily in Defendant's Columbus Avenue and Madison Avenue New York City stores.

45. Plaintiffs PAYANO, SUÀREZ, FOFANA, and GARCIA were assigned to primarily work in Defendant's Columbus Avenue (Manhattan) store.

46. Plaintiff FLORES was assigned to primarily work in Defendant's Madison Avenue (Manhattan) store.

47. Although the Non–Flagship Sales Associate Plaintiffs were primarily assigned to work at Defendant's Columbus and Madison Avenue stores, Defendant often told them to report to other non-Flagship Manhattan stores for weekly/monthly meetings, and/or for various work assignments.  These locations included Burberry's Madison Avenue store – where Plaintiffs PAYANO and SUÀREZ sometimes worked - and Defendant's Bleeker Street and Spring Street stores, where some of the Non-Flagship Sales Associate Plaintiffs often worked and where Defendant often held meetings for all of its Manhattan Non-Flagship Sales Associates.

48. Defendant paid the Non–Flagship Sales Associate Plaintiffs, the FLSA Non-Flagship Collective, and the Non-Flagship Class, hourly rates of $14 to $20 per hour, approximately, plus a 3% sales commission.

49. The Non–Flagship Sales Associate Plaintiffs' primary work duties included selling the Defendant's Burberry products, providing customer service, and setting up, maintaining, cleaning, opening, and closing Defendant's retail stores.  They also regularly had to

perform the following tasks:  make/receive phone calls and emails, do floor moves, receive and process shipments/deliveries, clean fixtures, display areas, restrooms, and changing rooms, open and close the registers, count monies, make bank deposits, and prepare, complete, and fax end of the day financial paperwork to corporate headquarters.

50.  Defendant failed to properly track, record, and pay for all of the hours worked by the Non-Flagship Sales Associate Plaintiffs, the FLSA Non-Flagship Collective, and the Non-Flagship Class. Indeed, for many of the years at issue Defendant utilized handwritten time-sheets to record time worked.

51. Defendant's handwritten time-sheets did not accurately reflect all time worked because the Sales Associates were often instructed by management to only record their scheduled, and not actual, time worked.  For example, in the Madison Avenue store a manager named Natalie instructed Plaintiff FLORES to only write down his scheduled hours, and not the actual hours he worked.   Similarly, in the Columbus Avenue store a manager named Anthony instructed Plaintiff GARCIA to only write down his scheduled hours, and not the actual hours he worked.  The other Non–Flagship Sales Associate Plaintiffs received similar instructions from their respective managers not to report their actual hours of work.

52. On many occasions, Defendant's managers inputted time entries onto Defendant's handwritten timesheets and on those occasions, regardless of the actual hours worked, Defendant's managers routinely entered the scheduled, and not actual, hours.

53. The Non–Flagship Sales Associate Plaintiffs, the FLSA Non-Flagship Collective, and the Non-Flagship Class, were normally scheduled to work for Defendant five days a week, although during busy times like during the holiday season they sometimes worked six

days a week.  They were normally scheduled to work a nine-hour day shift –from 10:00 AM to 7:00 PM or 10:30 AM to 7:30 PM - which included a one-hour unpaid lunch break.

54. Throughout their employment with Defendant, the Non–Flagship Sales Associate Plaintiffs, the FLSA Non-Flagship Collective, and the Non-Flagship Class regularly started working before the start of their scheduled shifts – to ensure that their stores were ready for opening, to clean up, to clean the outside of the stores by sweeping the sidewalk, to windex the windows and glass tables/counters, to replenish merchandise, to attend mandatory meetings, or several times a week in the Columbus Avenue store to let the cleaning crew in - without being paid for all of the hours they worked.

55. Throughout their employment with Defendant, and especially during the busy times, the Non–Flagship Sales Associate Plaintiffs, the FLSA Non-Flagship Collective, and the Non-Flagship Class regularly worked through their unpaid lunch breaks - to make sales and/or assist customers or other Burberry employees, to do returns or exchanges, and perform other tasks for Defendant.

56. The Non–Flagship Sales Associate Plaintiffs, the FLSA Non-Flagship Collective, and the Non-Flagship Class often had to stay 30 to 60 minutes, or later, after the end of their scheduled shifts to clean up their stores and prepare for (i) closing and (ii) opening the following day.  Often, they were not compensated for this extra post-shift work, or for their working through their one-hour lunch break, or when they were called to come for meetings or when they did other work prior to the beginning of their scheduled shifts. They thus regularly worked between 1 to 3 or more extra hours per day for which they were not compensated and during holiday or other busy times they often worked an extra

3 to 6 extra hours per day – during holidays the Sales Associates regularly worked 12 to 14 hours days - for which they were not compensated.

57. Defendant's practices resulted in the Non–Flagship Sales Associate Plaintiffs, the FLSA Non-Flagship Collective, and the Non-Flagship Class, regularly working more than 40 hours a week without being paid all of their earned overtime premiums, and in them not being compensated for all of the time they worked for Defendant.

58. Defendant's managers, including Regional Manager Barbara Hill and many of the store managers, told the Non–Flagship Sales Associate Plaintiffs, the FLSA Non-Flagship Collective, and the Non-Flagship Class that they were not authorized to pay Sales Associates overtime.

59. On numerous occasions the Non–Flagship Sales Associate Plaintiffs were told by management that Burberry didn't pay overtime when they worked more than 40 hours per week.  Plaintiff GARCIA himself once heard Regional Manager Hill yell at a Burberry manager "I can't pay an employee more than 40 hours, if they work more than the time they're scheduled that's on them. If they don't like it here they can leave."

60. Defendant profited from the extra hours worked by the Non–Flagship Sales Associate Plaintiffs, the FLSA Non-Flagship Collective, and the Non-Flagship Class, and Defendant should have paid them for this time.

### The Flagship Sales Associates

61. The Flagship Sales Associate Plaintiff, the FLSA Flagship Collective, and the Flagship Class worked for Defendant as Sales Associates assigned to work in Defendant's Flagship 57th Street New York City store.

62. Defendant paid the Flagship Sales Associate Plaintiff, the FLSA Flagship Collective, and the Flagship Class, hourly rates of $14 to $20 per hour, approximately, plus a 3% sales commission.

63. The Flagship Sales Associate Plaintiff's primary work duties included selling the Defendant's Burberry products, providing customer service, and various other assignments in Defendant's Flagship retail stores.

64. The Flagship Sales Associate Plaintiff, the FLSA Flagship Collective, and the Flagship Class, were normally scheduled to work for Defendant five days a week.  They were normally assigned to work a nine-hour day shift –from 9:30 AM to 6:30 PM, 10:00 AM to 7:00 PM (the "Mid-Shift"), or 10:30 AM to 7:30 PM - which included a one-hour unpaid lunch break.

65. Throughout their employment with Defendant, the Flagship Sales Associate Plaintiff, the FLSA Flagship Collective, and the Flagship Class were required to report to and attend monthly meetings – that often lasted 2 to 3 hours each - at Burberry's Manhattan corporate headquarters on Madison Avenue.  Burberry did not pay the Flagship Sales Associate Plaintiff, the FLSA Flagship Collective, and the Flagship Class for the time they spent attending these mandatory meetings nor were their hours of work reduced in the weeks during which these meetings occurred.

66. Often, especially when working the 10 AM to 7 PM Mid Shift, the Flagship Sales Associate Plaintiff, the FLSA Flagship Collective, and the Flagship Class worked off-the clock before the scheduled start, and after the scheduled end, of their shifts to make sales and/or assist customers or other Burberry employees or perform other work tasks.

Burberry did not pay the Flagship Sales Associate Plaintiff, the FLSA Flagship Collective, and the Flagship Class for this extra off-the-clock time.

67. On many occasions, especially during busy times, the Flagship Sales Associate Plaintiff, the FLSA Flagship Collective, and the Flagship Class worked through all or part of their unpaid lunch breaks - to make sales and/or assist customers or other Burberry employees. Burberry did not pay the Flagship Sales Associate Plaintiff, the FLSA Flagship Collective, and the Flagship Class for the time they worked during their unpaid lunch breaks.

68. Defendant failed to properly track, record, and pay for all of the hours worked by the Flagship Sales Associate Plaintiff, the FLSA Flagship Collective, and the Flagship Class.

69. Defendant's practices resulted in the Flagship Sales Associate Plaintiff, the FLSA Flagship Collective, and the Flagship Class, regularly working more than 40 hours a week without being paid all of their earned overtime premiums, and in them not being compensated for all of the time they worked for Defendant.

70. Defendant's managers, including a manager named Lynn Conover, told the Flagship Sales Associate Plaintiff, the FLSA Flagship Collective, and the Flagship Class that they were not authorized to pay Sales Associates overtime.

71. Defendant profited from the extra hours worked by the Flagship Sales Associate Plaintiff, the FLSA Flagship Collective, and the Flagship Class, and Defendant should have paid them for this time.

## **FIRST CLAIM FOR RELIEF**

**(FLSA Overtime Violations, 29 U.S.C. § 207 -
Brought by Plaintiffs on Behalf of Themselves and the FLSA Collective)**

72. Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

73. Throughout the statute of limitations period covered by these claims, Defendant was and continues to be an "employer" engaged in interstate commerce within the meaning of the FLSA and employed Plaintiffs and each member of the FLSA Non-Flagship Collective and the Flagship Collective (hereinafter the "FLSA Collective").

74. At all relevant times, Plaintiffs and the FLSA Collective members regularly worked in excess of forty (40) hours per workweek.

75. At all relevant times, Defendant operated under a policy and practice of failing to pay proper overtime compensation to Plaintiffs and the FLSA Collective members for all of the hours they worked in excess of 40 hours per week, and demanded, encouraged, allowed, and/or knowingly permitted the FLSA Collective members to work off-the-clock.

76. At all relevant times, Defendant willfully, regularly, repeatedly and knowingly failed to pay Plaintiffs and the FLSA Collective members at the required overtime rate of one-and-one-half their regular hourly rate of pay for all hours worked in excess of forty (40) hours per workweek.

77. Plaintiffs, on behalf of themselves and the FLSA Collective members, seek damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF

**(Failure to Pay Wages and Overtime Wages – NYLL, Brought by Plaintiffs on Behalf of Themselves and the Class)**

78. Plaintiffs, on behalf of themselves, the Non-Flagship Class, and the Flagship Class (hereinafter the "Class"), reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

79. It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime premiums for all hours worked in excess of forty (40) hours in any workweek.

80. It is unlawful under New York law for an employer to suffer or permit an employee to work without compensation for all hours worked.

81. At all relevant times, Defendant willfully, regularly, repeatedly and knowingly failed to pay Plaintiffs and the Class members for all hours worked and for all of the overtime hours worked at the required overtime rates for hours worked in excess of forty (40) hours per workweek.

82. As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Plaintiffs and the Class members have sustained damages, including loss of earnings, in an amount to be established at trial.

83. Plaintiffs, on behalf of themselves and the Class members, seek damages in the amount of their respective unpaid wages, unpaid overtime compensation, liquidated damages, attorneys' fees and costs, pre and post judgment interest, pursuant to the NYLL, and such other legal and equitable relief as this Court deems just and proper.

## **THIRD CLAIM FOR RELIEF**

**(Failure to Provide Accurate Pay Statements – NYLL § 195(3)
Brought by Plaintiffs on Behalf of Themselves and the Class)**

84. Plaintiffs, on behalf of themselves and the Class members, reallege and incorporate by reference all previous paragraphs as if they were set forth again herein.

85. Section 195(3) of the NYLL requires every employer to "furnish each employee with a statement with every payment of wages . . .. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked."

86. Defendant provided pay statements to Plaintiffs and the members of the Class that did not include an accurate number of hours worked.

87. The pay statements that Defendant provided to Plaintiffs and the members of the Class included the number of regular and overtime hours paid, not the number of regular and overtime hours actually worked as required by the NYLL.

88. Defendant violated NYLL § 195(3) and consequently owes Plaintiffs and the members of the Class statutory damages as specified by NYLL § 198(1-d).

89. Plaintiffs, on behalf of themselves and the Class Members, seek statutory damages as specified by NYLL § 198(1-d), reasonable attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, pray for relief as follows:

(a) A Declaration that Defendant has violated the FLSA and other applicable laws;

(b) Designation of this action as a collective action on behalf of the FLSA Collective and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated

members of the FLSA opt-in class, apprising them of the pendency of this action, and

permitted them to assert timely FLSA claims and state claims in this action by filing

individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

(c)  Designation of Plaintiffs as Representatives of the FLSA Collective;

(d)  Designation of this action as a class action pursuant to Fed. R. Civ. P. 23;

(e)  Designation of Plaintiffs as Representatives of the Class;

(f)  Designation of Plaintiffs' Counsel as Class Counsel for the FLSA Collective and for the

Class;

(g)  An award of damages, according to proof, including the FLSA and NYLL liquidated

damages, to be paid by Defendant;

(h)  Penalties available under applicable laws;

(i)  Statutory damages under NYLL § 198(1-d) for violations of NYLL § 195(3);

(j)  Costs of action incurred herein, including expert fees;

(k)  Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663, and

other applicable statutes;

(l)  Pre-judgment and post-judgment interest, as provided by law; and

(m) Such other and further legal and equitable relief as this Court deems necessary, just and

proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial

by jury of all issues.

Dated: December 14, 2015

Respectfully submitted,

HARRISON, HARRISON & ASSOC., LTD.

22

_/s/DAVID HARRISON_____

David Harrison, Esq.
110 State Highway 35, 2nd Floor
Red Bank, NJ 07701
Telephone: 718-799-9111
Facsimile: 718-799-9171
nycotlaw@gmail.com

D. Maimon Kirschenbaum, Esq.
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, 6th Floor
New York, NY 10004
Telephone: (212) 688-5640
Facsimile: (212) 688-2548
maimon@jhllp.com

*Attorneys for Plaintiff, proposed FLSA Collective members and the proposed Class Members*

Amy Bess, Esq.
Joseph K. Mulherin, Esq.
Vedder Price, P.C.
1633 Broadway, 47th Floor
New York, New York 10019
*Attorneys for Defendant*

# EXHIBIT A